IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCREEN ACTORS GUILD – AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, AFL-CIO,<br><br>Plaintiff,<br><br>v.<br><br>SHERIDAN BROADCASTING NETWORKS, SHERIDAN BROADCASTING CORPORATION, RONALD DAVENPORT, JR., and RONALD DAVENPORT, SR.,<br><br>Defendants. | Civil Action No. 18-455<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 38 |

**MEMORANDUM ORDER**

Plaintiff Screen Actors Guild – American Federation of Television and Radio Artists, AFL-CIO ("SAG – AFTRA" or the "Union"), brings this action on behalf of regular full-time and part-time newspersons, audio journalists, and producers formerly employed by Sheridan Broadcasting Networks ("SBN"), in an effort to obtain damages deemed owing in arbitration filed against SBN. SAG – AFTRA alleges liability pursuant to the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(c), and asserts state law claims against Defendants SBN, Sheridan Broadcasting Corporation ("SBC"), Ronald Davenport, Jr., and Ronald Davenport, Sr. (the individual Davenport Defendants shall be referred to collectively as the "Davenport Defendants"). ECF No. I.

In the instant Complaint, SAG – AFTRA brings claims against SBN, its alter ego SBC, and the Davenport Defendants for (1) breach of contract arising out of Defendants' failure to

comply with a collective bargaining agreement requirement to remit payment ordered pursuant to a properly entered arbitration award (Count I), (2) a claim for unpaid wages pursuant to the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260 *et seq.*, (Count II), and (3) a claim for conversion of Union dues deducted from employee pay but not remitted to SAG – AFTRA (Count III). Id.

Pending before the Court is the Motion for Judgment on the Pleadings, ECF No. 38, filed by SAG – AFTRA, requesting that this Court enter the judgment in its favor as a matter of law pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure, and against each of the named Defendants. Defendants have filed their brief in opposition to the motion, ECF No. 43, and SAG – AFTRA has filed its reply thereto, ECF No. 44. Upon review of the filings in this matter and for the following reasons, the motion will be granted.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

For purposes of resolving the pending Motion for Judgment on the Pleadings, the Court notes that Defendants have filed an Answer to the Complaint and, unless otherwise indicated, Defendants have admitted the following facts set forth in the Complaint. See, generally, ECF Nos. 1, 7.[2]

SAG – AFTRA and SBN entered into a collective bargaining agreement ("CBA") on behalf of SBN employees covering the period of November 8, 2016, through November 7, 2019. Id. ¶¶ 10, 11. Pursuant to the CBA, disputes arising out of allegations of breach of the CBA are

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct all proceedings in this case. ECF Nos. 13, 24.

[2] Defendants' Answer to the Complaint sets forth admissions to factual allegations that are binding for all purposes in this action. Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004) ("'Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them.'") (quoting Keller v. United States, 58 F.3d 1194, 1198 n. 8 (7th Cir. 1995)). Judicial admissions are confined to "matters of fact which otherwise would require evidentiary proof." Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir.1972).

2

required to be resolved through a grievance procedure. If a grievance is not resolved through the grievance procedure, the Union is authorized by the CBA to submit the grievance to binding arbitration. Id. ¶¶ 12-14.

In accordance with the agreed procedures, SAG – AFTRA filed a grievance alleging that on or about August 29, 2017, SBN terminated all represented employees, and in so doing: (1) failed to give proper notice of termination as required by the CBA; (2) failed to pay all terminated employees required severance pay; and, (3) failed to pay all terminated employees for work performed between August 16, 2017 and August 29, 2017. In addition, SAG – AFTRA alleged that SBN failed to implement a 3% wage increase effective November 8, 2016, failed to pay employees for out-of-pocket expenses incurred in the performance of their assigned duties, and failed to remit Union dues previously withheld from the pay checks of SAG – AFTRA member-employees. Id. 15-16. ECF No. 7 ¶¶ 15,16.

Because the grievance was not resolved through the designated grievance procedure, SAG – AFTRA filed a request for arbitration with the Federal Mediation and Conciliation Service ("FMCS"). Defendants admit that in the course of arbitration, the parties submitted a comprehensive list of 51 stipulated facts. ECF No. 1 ¶ 19; and ECF No. 1 at 49-52, ECF No. 7 ¶ 19. Through the stipulated facts, SBN agreed that in addition to the amounts set forth in the grievance, it had also failed to pay one employee her clothing allowance and reimbursement. ECF No. 1 ¶ 19, ECF No. 7 ¶ 17-22. SBN has stipulated to its liability for these amounts, as well as to liability for additional sums as set forth in exhibits SBN and SAG – AFTRA jointly submitted to the arbitrator. Id. In particular, the submitted exhibits itemize obligations to pay sums owed to eleven employees in lieu of written notice of termination and severance pay; back pay owed to ten employees resulting from SBN's untimely implementation of the November 8,

2016, 3% wage increase; pay owed to ten employees for salaries not paid for the period August 16, 2017 through August 31, 2017; and remuneration owed to six employees for unreimbursed expenses. Id.

As stipulated to by SBN in arbitration, the following amounts are due and owing:

| CLAIM | AMOUNT OWED |
|---|---|
| Failure to pay Terminated Employees in lieu of giving written notice of termination. | $ 36,343.29 |
| Failure to pay Terminated Employees severance pay. | $ 170,685.12 |
| Failure to timely implement November 8, 2016 3% wage increase. | $ 2,812.38 |
| Failure to pay Terminated Employees for time worked during the period August 16, 2017, through August 31, 2017, and for wraps and voicers produced during the period August 1, 2017, through August 31, 2017. | $ 18,829.84 |
| Failure to pay April Ryan for clothing allowance and mileage and expenses incurred in the course of her employment. | $ 9,088.39 |
| Failure to remit to SAG-AFTRA union dues withheld from bargaining unit employees' paychecks. | $ 2,293.90 |
| TOTAL | $ 240,052.11 |

ECF No. 7 ¶ 23, ECF No. 1 at 49-55.

An arbitration hearing was held on November 20, 2017, with Ronald Davenport, Jr., appearing on behalf of and representing SBN. SBN conceded "there is no contention with the Union's position on either employee back-pay, fringe benefit claims or the Union's claim for non-remitted withheld dues." ECF No. 1 at 46. SBN further stated that, "[t]he Company stipulates to its liability for the amounts referenced above as contained in Joint Exhibit 1 and exhibits thereto." Id. Accordingly, on February 2, 2018, the Arbitrator issued an Award of Arbitration and granted the grievance(s) as requested. Id.

4

Thereafter, SBN failed to remit payment in accordance with the Award of Arbitration. As a result, SAG – AFTRA commenced the instant action on April 6, 2018, asserting entitlement to the amounts set forth above, plus liquidated damages of 25% of the wages owed pursuant to the WPCL, in the amount of $65,165.53. In addition, SAG – AFTRA seeks punitive damages in the amount of $250,000.00 for breach of the defendants' fiduciary duties, as well as reasonable attorney's fees and costs. ECF No. 1 at 8-9.

With regard to its assertion of liability as to SBC and the Davenport Defendants, SAG – AFTRA alleges as follows:

4. SBN is a corporation organized and existing under the laws of the State of Delaware, with an agent located at 715 Ambrose Avenue, Pittsburgh, Pennsylvania 15232. SBN is an employer within the meaning of Section 2(2) of the NLRA, 29 U.S.C. § 152(2), Section 301 [] of the LMRA, 29 U.S.C. § 185, and Section 2.1 of the WPCL, 43 P.S. §260.2a.

5. SBC is a corporation organized and existing under the laws of the State of Delaware, with an agent located at 715 Ambrose Avenue, Pittsburgh, Pennsylvania 15232. SBC is an employer within the meaning of Section 2(2) of the NLRA, 29 U.S.C. § 152(2), Section 301 [] of the LMRA, 29 U.S.C. § 185, and Section 2.1 of the WPCL, 43 P.S. §260.2a.

6. The defendant Junior is an officer and agent of the Employer within the meaning of Section 2.1 of the WPCL 43 P.S. §260.2a. He lives at 715 Ambrose Avenue, Pittsburgh, Pennsylvania 15232.

7. The defendant Senior is an officer and agent of the Employer within the meaning of Section 2.1 of the WPCL 43 P.S. §260.2a. He lives at 5837 Solway Street, Pittsburgh, Pennsylvania 15217.

8. SBN and SBC were alter egos of each other in that SBC exercised dominion and control over [Sheridan Broadcasting Networks] and SBC and that SBN and SBC have so intermingled their financial affairs and managerial structures that they were the alter egos of each other and are thus each liable for each other's obligations.

9. At all times relevant hereto, SBN and SBC functioned in a manner as if they were a single employer in that their financial affairs and managerial structures are so intermingled that every act or omission on the part of SBN can be attributed to SBC and every act or omission on the part of SBC can be attributed to SBN and that the Defendants are thus each liable for each other's obligations.

ECF No. 1 ¶¶ 8-9.

On July 18, 2018, in the absence of an Answer to the Complaint, SAG – AFTRA moved for the entry of Default Judgment. ECF No. 6. Immediately thereafter, Defendants filed their Answer to the Complaint and therein admit the "Employer" status of SBC and SBN, the alter ego status of Defendants SBC and SBN, and the "Employer" status of the individual Davenport Defendants as officers and agents of SBN and SBC. ECF No. 7 ¶¶ 8-9. Defendants further admit that in the course of arbitration, SBN stipulated to liability for all amounts described. ECF No. 1 ¶ 20, ECF No. 7 ¶¶ 17-22.

Defendants concede that SBN has neither paid the amounts due and owing nor "file[d] a complaint to vacate the terms of the Award." ECF No. 7 ¶ 23. Based upon Defendants'

admissions to certain dispositive allegations in the Complaint, SAG – AFTRA indicated its intention to file a Motion for Judgment on the Pleadings as to each of its claims and against all Defendants. ECF No. 26.

On October 25, 2018, Defendants collectively responded indicating interest in resolving all claims and requested additional time to permit the parties to enter into a final written settlement agreement. Id. On December 21, 2018, SAG – AFTRA filed a Motion to Hold Settlement Conference and Reset Motion Dates, indicating that Defendants concurred with the motion. The motion included the representation that "[Defendants] are without means to pay any liquidated or non-liquidated damages. Plaintiff is aware, however, at least one of the defendants has a pending asset sale that theoretically could satisfy any judgment and/or settlement of this matter." ECF No. 28. The parties requested that this Court schedule a settlement conference, and the conference was scheduled for February 11, 2019, with an interim telephonic status conference scheduled for February 7, 2019. Id. Defendants did not appear at the interim conference but personally attended the settlement conference on February 11, 2019. ECF No. 33. The conference resulted in Defendants' joint agreement to the entry of a consent judgment. Id. Defendants further agreed to provide Plaintiffs' counsel with a draft of the judgment within four days and agreed that each would execute and file the consent judgment on the docket of this matter no later than February 22, 2019. Id.

On February 25, 2019, this Court learned that Defendants failed to honor their agreement to enter the consent judgment on the docket, and Plaintiff was directed to file the Motion for Judgment on the Pleadings that it had intended to file months earlier. ECF No. 34. Plaintiff has filed the Motion; Defendants have obtained new counsel; and now, for the first time, Defendants challenge liability for the previously admitted sums due to each involved SAG – AFTRA

member and to the Union. ECF Nos. 35 – 37, 38, 42. It is clear to this Court, based upon the conduct displayed and representations made to the Court, that at all times and in all proceedings before this Court up to February 25, 2019, Defendants have conceded individual and joint liability for all amounts owed arising out of the Award of Arbitration (and have consented to the entry of judgment), but through delays and gamesmanship, are now engaging in behavior that dishonors this Court and the impacted employees. While this Court believes that all defenses to liability have been waived, the Court will address each of the arguments and defenses raised in the pending motion. The Court notes that based upon this behavior, Plaintiff was invited to file a Motion for Sanctions, but has thus far refrained from seeking additional relief that would otherwise be available.

## II. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In reviewing a Rule 12(c) motion, the Court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. Judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290–91 (3d Cir.1988)).

## III. DISCUSSION

Despite Defendants' admissions with regard to all facts establishing liability for amounts owed SAG – AFTRA, Defendants now contend for the first time, that as to the breach of contract claim, liability may lie only as to SBN because neither SBC nor the Davenport Defendants are

8

parties to the CBA. In addition, Defendants contend that SAG – AFTRA's WPCL claim is preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144, as well as the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Finally, as to conversion, Defendants contend that the admitted factual allegations do not establish the degree of willful interference required under Pennsylvania law. ECF No. 43.

A.  **Breach of Contract Claim**

Through its claim for breach of contract, SAG – AFTRA seeks to recover the full amount of the Award of Arbitration entered against SBN in accordance with the terms and obligations imposed by the CBA. ECF No. 1 at 6-7. Defendants object to the imposition of liability as to SBC on the basis that Pennsylvania common law limits liability for breach of contract to the parties to the contract. ECF No. 43 at 4 (citing Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super. 1991), and Viso v. Werner, 396 A.2d 1185 (Pa. 1977)). Because SBC was not a signatory to the CBA, Defendants contend it cannot be liable for any obligation owed thereunder.

Pennsylvania, however, has long recognized that even in contract, "[w]here a corporation has been formed in order to enable an individual or other entity to escape an existing legal obligation, the independence of the separate corporate entity will be ignored and 'disregarded whenever it is necessary to avoid injustice.'" Hanrahan v. Audubon Builders, Inc., 614 A.2d 748, 753 (Pa. Super. 1992); and see Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 508 (3rd Cir. 1995); Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978); Chambers v. Todd Steel Pickling, Inc., 470 A.2d 159, 164 (Pa. Super. 1983)(lower court erred in dismissing claim against non-party to contract where evidence indicated that control over corporation warranted disregard of legal fiction of corporate status).

The factors weighed to determine when it is appropriate or necessary to ignore the separate status of a corporation are flexible, and a finding or fraud or illegality is not required. Ragan, 62 F.3d at 508. Rather, a Court is to balance the equities of a situation, and to disregard the fictional status of a corporation whenever "justice or public policy demand." Ashley, 393 A.2d at 641. To this end, SAG – AFTRA cites to John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 549-50 (1964), where the United States Supreme Court recognized that the objectives of national labor policy "require that the rightful prerogative of owners independently to rearrange their businesses and even eliminate themselves as employers be balanced by some protection to the employees from a sudden change in the employment relationship." In the case before it, the Supreme Court required a successor to a collective bargaining agreement with sufficient continuity of identity in the business enterprise to comply with an arbitration provision despite its status as a nonparty to the contract.

SAG – AFTRA similarly seeks to require SBC to comply with the terms of the CBA and render payment for a duly entered Award of Arbitration against SBN, citing the admitted failure by and between all Defendants to adhere to corporate formalities. In opposing the pending motion, Defendants do not challenge the factual basis for SBC's liability, given the collective and binding admission that "[a]t all times relevant hereto, SBN and SBC functioned in a manner as if they were a single employer in that their financial affairs and managerial structures are so intermingled that every act or omission on the part of SBN can be attributed to SBC and every act or omission on the part of SBC can be attributed to SBN and that the Defendants are thus each liable for each other's obligations." ECF No. 1 ¶ 9, ECF No. 7 ¶ 9. Under these unique circumstances, Defendants' reliance on the general legal principle of contract privity is insufficient. The Court finds that in the absence of a factual challenge to liability, and based on

the clear admissions of SBN and SBC, it is in the interest of justice to find SBC equally liable to SAG – AFTRA and its represented employees for the obligations assumed by SBN under the CBA. Accordingly, the Motion for Judgment on the Pleadings is granted in favor SAG -AFTRA and against SBC and SBN with regard to its breach of contract claim.

      **B.**      **Pennsylvania Wage Payment and Collection Law Claim**

In Count II of the Complaint, SAG – AFTRA claims entitlement to wages due and payable pursuant to the Pennsylvania WPCL, 43 P.S. § 260.1 *et. seq*. ECF 1 ¶¶ 28-32. The WPCL provides a civil remedy for employees to "recover unpaid wages" from their employers. 43 P.S. § 260.9a(b), and includes within the definition of wages "all earnings of an employe," as well as "fringe benefits or wage supplements whether payable by the employer from his funds or from amounts withheld from the employe's pay by the employer." 43 P.S. § 260.2a.

Of particular relevance to the Davenport Defendants, the WPCL defines "Employer" to include "every person, firm, partnership, association, corporation, receiver … *and any agent or officer of any of the above-mentioned classes* employing any person in this Commonwealth." Id. (italics added). Further, the WPCL authorizes the imposition of liability for reasonable attorneys' fees to be paid by the defendants, as well as liquidated damages equal to twenty-five percent (25%) where there is "no good faith contest or dispute of any wage claim … exists accounting for such non-payment …." 43 P.S. § 260.9a(f). Given Defendants' concessions to each wage and benefit claim asserted and to the amount owed, the claim for liquidated damages is statutorily authorized. ECF No. 1 ¶¶ 17-22, ECF No. 1 at 49-55, ECF No. 7 ¶¶ 17-22.

Despite repeated acceptance of liability for sums owed, Defendants now assert that SAG – AFTRA's WPCL claim is preempted by ERISA and LMRA, and subject to dismissal solely

11

because of the presence of a collective bargaining agreement. ECF No. 43 at 4-8. Preemption under either statute is not as broad as Defendants contend.

Section 301 of the LMRA, 29 U.S.C. § 185(a) grants federal courts jurisdiction over actions for breach of contract based on a collective bargaining agreement between a union and an employer. The United States Supreme Court has held that this provision preempts state law claims and confers federal subject matter jurisdiction over disputes concerning the interpretation of collective bargaining agreements: "[Section] 301 pre-empts state law … insofar as resolution of the state law claims require[s] interpretation of a collective bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 409 n. 8 (1988).

In this instance, SAG – AFTRA correctly indicates that interpretation of the CBA is not needed to resolve its WPCL claim. Through the underlying arbitration proceedings, SBN (and SBC as its alter-ego), stipulated to all relevant facts concerning its obligations under the CBA and the amounts owed each employee and the Union. Further, Defendants (including the Davenport Defendants), in their Answer to the Complaint and in representations to this Court, have conceded liability and agreed to the entry of judgment against each of them. Under these unique circumstances (including Defendants' waiver of preemption), SAG – AFTRA's state law claim stands independent of rights under the CBA, and is comparable to that at issue in Lividas v. Bradshaw, 512 U.S. 107 (1994), where the United States Supreme Court explained that Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Lividas, 512 U.S. at 123. The Court "stressed that it is the legal character of a claim, 'independent' of rights under the collective bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued []) that decides whether a state cause of action may go forward. *Finally, we were clear that when the*

*meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."* Id., at 123-24 (internal citations omitted).

In Lingle, supra, the Supreme Court further held that "[a] collective-bargaining agreement may, of course, contain information such as rate of pay … that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled." 486 U.S. at 409. However, "the mere need to 'look to' the collective bargaining agreement for damages computation is no reasons to hold the state-law claim defeated by § 301." Lividas, 512 U.S. at 125.

Defendants cite Antol v Esposto, 100 F.3d 1111 (3d Cir. 1996), for the proposition that a suit to recover wages pursuant to the WCPL is preempted. Plaintiffs in Antol did not proceed to arbitration, choosing instead to sue individual officers and stockholders of the defendant corporation in state court. Antol, 100 F.3d at 1119. The United States Court of Appeals for the Third Circuit noted that under the WPCL, officers are the "employer" and are personally liable for obligations of the corporate employer, and as such, if permitted to proceed, plaintiffs' action would "substantially alter the scope and enforcement of the typical collective bargaining agreement." Id. at 1120. The Third Circuit's primary concern was the ability of employees to bypass CBA grievance procedures by suing corporate officers in state court, leading to disparate results based upon the forum and parties sued. Id. In the interest of having a uniform labor policy, the Third Circuit found the Pennsylvania Wage Law preempted. Id. at 1121.

Such concerns, however, are not present in the instant case. First, Defendants have voluntarily and repeatedly conceded individual and collective liability to Plaintiff's WPCL claim before this Court, and so have waived any defense to this claim. Second, the amounts due and

13

owing are fixed, based upon the parties' participation in the grievance procedures, stipulated facts in the arbitration, and the arbitration of employee and Union claims. Thus, the arbitrator's award, voluntarily stipulated to by SBN (and SBC as its alter ego) renders unnecessary reference to or interpretation of the terms of the CBA to resolve this dispute, and eliminates any potential for inconsistent results. Finally, the parties need only look to the Award of Arbitration, the Answer to the Complaint, and the parties' representations before this Court, wherein each Davenport Defendant conceded his status as an officer and/or agent of SBC and SBN for liability for amounts due. Under these unique circumstances, Plaintiff's WPCL claim is not preempted by the LMRA.

Defendants next contend that ERISA preempts SAG – AFTRA's WPCL claims. As noted *supra*, Defendants have conceded liability and have waived all substantive defenses based upon representations made in their Answer, the stipulation submitted in the arbitration proceeding, and to the Court as set forth on the docket of this matter. Further, while SAG – AFTRA seeks severance pay and other limited benefits, the claims "do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme." See, Giradot v. Chemours Company, 731 F. App'x 108, 111 (3d Cir. 2018) (quoting Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992)). "The 'crucial factor" in determining whether a program constitutes an ERISA plan is whether the employer expresses the intention 'to provide benefits on a regular and long-term basis.'" Id. In Giradot, employees agreed to termination pursuant to the terms of a voluntary separation program that provided severance and extended medical coverage. Claims against the program arose, prompting suit by the employees to recover benefits due. The United States Court of Appeals for the Third Circuit rejected the employer's assertion of preemption, concluding that ERISA was not implicated

because payment of benefits owed would not require indefinite responsibilities or oversight by an administrative scheme.

Here, SAG – AFTRA seeks to recover unpaid wages, severance payments, and expense reimbursements. The sums were rendered payable through the Award of Arbitration and consent to entry of judgment as to all Defendants. No further administrative tasks are imposed upon any Defendant-Employer and as such, an ERISA benefit plan is not implicated. Accordingly, for each of the reasons set forth above, the Motion for Judgment on the Pleadings as to SAG – AFTRA's WPCL claim is granted.

**C.    Conversion**

Plaintiff brings a claim for conversion with regard to Defendants' "failure to transmit Union dues withheld from the paychecks of the employees represented by the Union." ECF No. 1 ¶ 19. In arbitration and in this Court, Defendants have conceded liability for the dues they withheld from employee salaries but failed to remit to the Union. Id. at 51-52. The Court concludes that under these circumstances, Defendants have waived any defense to liability.

With regard to the substance of Defendants' argument, "[c]onversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Laborers Combined Funds of W. Pa. v. Cioppa, 346 F. Supp. 2d 765, 773 (W.D. Pa. 2004) (citing Shonberger v. Oswell, 530 A.2d 112, 114 (Pa. Super. 1987)). Under Pennsylvania's "participation theory," "a corporate officer who takes part in the commission of a tort by the corporation is personally liable for that tort." Id. (citing Voest–Alpine Trading USA Corp. v. Vantage Steel Corp., 919 F.2d 206, 217 (3d Cir. 1990)). Courts within this district have found that a corporate officer/owner may be held liable under the participation theory for conversion of wages withheld from employees and used to pay corporate

15

liabilities rather than being submitted to employee benefit funds as required by labor agreements. See Cioppa, 346 F.Supp.2d at 773; Laborers' Combined Funds of W. Pennsylvania v. Parkins, 2002 WL 31435287, at *4-5 (W.D. Pa. June 5, 2002).

Here, it is undisputed that the Davenport Defendants, as sole officers of SBC and SBN, were personally responsible for directing the payment of corporate expenses. Defendants likewise do not dispute that the applicable CBA required SBN to submit to SAG - AFTRA wages withheld from employees for union dues, and that Defendants failed to do so. In failing to remit the withheld dues to the Union, Defendants clearly deprived the Union of their right of property and, therefore, each is personally liable for conversion of the withheld dues under Pennsylvania law. See Laborers' Combined Funds of W. Pennsylvania v. Molinaro Corp., 234 F. Supp. 3d 660, 669 (W.D. Pa. 2017) (citing Cioppa, 346 F. Supp. 2d at 773) (granting summary judgment against individual defendant on similar conversion claim, explaining that "the withheld wages were not submitted to the Combined Funds, and, regardless of what he did with the withheld wages, [defendant] clearly deprived others of their right of property")).

**D.    Damages**

SAG – AFTRA claims damages awarded in arbitration for unpaid wages, unpaid severance pay, pay due in lieu of written notice of termination, failure to implement a wage increase, failure to reimburse expenses, and failure to remit union dues withheld from employee paychecks. SBN/SBC has conceded liability for all sums in awarded in arbitration and the Davenport Defendants have conceded their personal responsibility for sums due and owing in the course of this litigation. Under these extraordinary circumstances, the Court finds that SAG – AFTRA is entitled to the damages claimed as follows:

| | |
|---|---|
| Wages to be paid in lieu of notice of termination | $ 36,343.29 |
| Severance pay owed employees | $ 170,685.12 |
| Unpaid wages attributed to 3% wage increase | $ 2,812.38 |
| Wages owed employees for the period August 16-31, 2017, and wraps and voices produced during August 2017 | $ 18,829.00 |
| Clothing allowance, mileage, and other unreimbursed expenses | $ 9,088.39 |
| Union dues withheld and not remitted | $ 2,293.09 |
| Liquidated Damages of 25% of wages owed | $ 65,165.53 |
| **TOTAL** | **$ 325,827.64** |

SAG – AFTRA also seeks punitive damages as well as attorney's fees and costs, which shall be considered separately upon motion filed in support thereof. Any motion related thereto shall be filed no later than ten days from the entry of this Opinion and Order. In the absence of a motion, or upon the filing of a notice withdrawing these claims, Judgment shall be entered in the amount of $ 325,827.64.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 38, is properly granted. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 5th day of April, 2019, upon consideration of the Motion for Judgment on the Pleadings, ECF No. 38, filed on behalf of the Screen Actor's Guild – American Federation of Television and Radio Artists, AFL – CIO, and Defendants' response thereto, and pursuant to the Memorandum Opinion filed herewith,

IT IS HEREBY ORDERED that Plaintiff's Motion for Judgment on the Pleadings is GRANTED and, as to the claims at issue therein, the Court finds in favor of Plaintiff and against Defendants Sheridan Broadcasting Networks, Sheridan Broadcasting Corporation, Ronald Davenport, Jr., and Ronald Davenport, Sr., in the amount of $325,827.64.

IT IS FURTHER ORDERED that within ten days, Plaintiff shall file a motion for attorney's fees and costs and a motion for an award of punitive damages, unless otherwise withdrawn, and if withdrawn, Plaintiff shall file a Notice of Voluntary Dismissal of its claims for either or both attorneys' fees and cost and punitive damages.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing